AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Vermont

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 MAY 12 PM 3: 16

CLERK
BY _EY_
DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 2:22-MJ-62
IPHONE 7 MODEL 3C206LL/A CURRENTLY LOCATED AT )
THE SWANTON BORDER PATROL STATION )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference

located in the _____ District of Vermont, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing alien to US or transporting alien in furtherance of illegal entry into US |
| 8 U.S.C. § 1325 | Improper entry by alien into US |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey Maney, Border Patrol Agent (Intel)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 12, 2022

*Judge's signature*

City and state: Burlington, Vermont

Hon. Kevin J. Doyle, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

The item to be searched is an iPhone 7 wireless smart phone (model number 3C206LL/A and IMEI 354918093529332) ("the Device"). The Device is currently located in the evidence safe at the Sector Intelligence Unit at the U.S. Border Patrol Swanton Station, 104 Raven Dr., Swanton, VT 05488.

## ATTACHMENT B

All data on the Device described in Attachment A that evidence violations of 8 U.S.C. § 1324 or 8 U.S.C. § 1325, including:

 a. Communications and other records related to international travel, transportation arrangements, rental agreements, overnight accommodations, itineraries, payments, or location updates—including e-mails, text messages, instant messages, chat logs, attachments to messages, and drafts;

 b. Photographs and other images of individuals or groups, border locations, currency, receipts, purchases, vehicles, and/or locations;

 c. Ledgers, notes, or other records of types, amounts, and prices of individuals picked up and transported, as well as information about the dates and places of those transactions;

 d. Records of financial transactions, including wire transfers, bank deposits and withdrawals, credit or debit card activities, and electronic currency activities;

 e. Contact lists showing names, street names, nicknames, phone numbers, email addresses, screen names of associated individuals;

 f. Geographic locations of the Device at times relevant to the investigation;

 g. Evidence indicating how and when the Device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

 h. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, usernames and passwords, documents, and browsing history; and

      i.    Records evidencing the use of the Device to access the internet, including Internet Protocol addresses used and internet activity (firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses).

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Jeffrey M Maney, being duly sworn, depose and state as follows:

**Affiant Background and Purpose of Application**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device—described below and in Attachment A—that is currently in law enforcement's possession and the seizure from that device of the electronically stored information described in Attachment B. This application arises from the contact between the United States Border Patrol (USBP) and Bledar Mulaj on April 30, 2022, in the District of Vermont during the investigation of a suspected alien-smuggling event.

2. The item to be searched is an iPhone 7 wireless smart phone (model number 3C206LL/A and IMEI 354918093529332) (hereinafter, "the Device"). The Device is believed to be abandoned property left in the vehicle by one of the smugglers, and it was seized during the stop of Mulaj's vehicle on April 30, 2022. While a search warrant is probably unnecessary to search abandoned property, I apply for this warrant out of an abundance of caution. Based on my training and experience, the Device has been stored in a manner such that the data on it shall remain intact and in the same condition as they were at the time of the seizure of the Device.

3. The applied-for warrant would authorize the forensic examination of the Device for the purpose of seizing electronically stored data, particularly described in Attachment B, that would evidence alien smuggling activities by or involving the user of the Device—specifically, violations of Title 8, United States Code, Sections 1324 and 1325.

4. I am a Border Patrol Agent (BPA) Intelligence (Intel) [BPA(I)] with the United States Department of Homeland Security, Office of Border Patrol. I have been employed as a BPA since July 2002. I am currently assigned as a Station Intelligence Agent, and I work at the

1

Newport Border Patrol Station in Newport, Vermont. I received formal training to identify and investigate alien smuggling and narcotics smuggling activities both at the United States Border Patrol Academy in Charleston, South Carolina, from July 2002 to December 2002 and also through regular and recurring on-the-job training and annual Virtual Learning Center course certification. In my experience investigating many alien smuggling and narcotics smuggling cases, electronic devices were commonly used to facilitate the smuggling event by arranging the coordination of transportation and by guiding both the smugglers transporting the aliens/narcotics and the receiving load driver via global positioning system applications and verbal and/or non-verbal communications relayed over Wi-Fi and/or a telecommunications network.

5. Based on my training and experience, I am aware that individuals working together to commit crimes often use their cellular phones to contact one another, to research related topics, to navigate while driving, and to coordinate meeting locations. These tasks are frequently necessary in the Swanton Sector Area of Responsibility (AOR); given the remote and rural nature of the AOR, arranging meetings at precise times and navigating to locations unlikely to appear on printed maps often requires the use of cellular devices. Further, I am aware that cellular phones and the cellular network often generate and record data without the phone users necessarily being aware of or able to delete the data.

6. I have received formal training as well as on-the-job training on using the XRY digital forensics extraction program as well the XAMN digital forensics analysis program. The XRY program is a mobile forensic extraction program that is utilized with a computer to extract data from many types of electronic devices, including smart phones. XAMN is a digital forensics analysis program that is used for decoding, analysis, and reporting of data from

electronic devices, including smart phones. XRY and XAMN are not the only programs used in forensic examination of electronic devices, but they are some of the tools available to me locally.

7. The information contained within this affidavit is based upon my training and experience, upon my own investigative efforts, and upon investigation by other law enforcement officers with whom I have spoken or whose reports I have reviewed. The following is either known to me personally or has been related to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause to believe that the violations occurred, and it does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described in the following paragraphs are related in sum and substance and are not meant as direct quotations or complete descriptions.

## Probable Cause

8. On April 30, 2022, Border Patrol Agents from the Newport Station were contacted by Swanton Sector Radio Communications and told that remote sensing equipment had alerted the observers to subjects entering the United States from Canada at approximately 6:20 am in the vicinity of North Troy, Vermont—a location within the District of Vermont. The subjects crossed the international border in an area north of Dominion Avenue and east of railroad tracks; the railroad tracks are east of the nearest Port of Entry, so the area where they crossed is not a designated location for entry to the United States. Dominion Avenue is a dead-end, north-south residential road that terminates approximately one quarter mile from the international border between the United States and Canada.

9. At approximately 6:20 am on April 30, 2022, remote sensors captured images of a white Chrysler Pacific (bearing Maryland plate 5ED7361) traveling north on Dominion Avenue.

3

Border Patrol Agents were familiar with cross-border smuggling activities along Dominion Avenue due in part to an event on April 5, 2022, where a Mercedes SUV driven by an individual of Albanian descent picked up two Albanian nationals who had just crossed into the United States north of Dominion Avenue; that incident resulted in the arrest of two individuals and the seizure of the Mercedes SUV and two electronic devices from the driver. There was also another smuggling event on April 14, 2022, where a Hyundai SUV driven by an individual of Albanian descent picked up two citizens of Kosovo (later determined to be of Albanian descent) who had just crossed into the United States north of Dominion Avenue; that incident resulted in the arrest of two individuals and the seizure of the Hyundai and one electronic device from the driver.

10. Border Patrol Agents responded to the area south of Dominion Avenue on April 30, 2022, in an attempt to locate the white Chrysler Pacifica along Routes 100 and 101 in Vermont. Agents were unsuccessful in locating the vehicle in the immediate area, so they proceeded southbound on Interstate 91 in search of the vehicle. At approximately mile marker 138 along southbound Interstate 91, Border Patrol Agents discovered a white Chrysler Pacifica with Maryland license plate 5ED7361. Border Patrol Agents activated their emergency lights and sirens, and the vehicle yielded.

11. The lead agent approached the vehicle, identified himself as a Border Patrol Agent, and conducted an immigration inspection on the three occupants of the vehicle. The driver, identified as Bledar Mulaj, claimed to be an Albanian citizen who was born in Albania but who has a pending asylum claim in the United States; agents were later able to confirm his status and his pending asylum claim. The passengers were identified as Diana Mulaj and Lion Mulaj. Diana Mulaj presented Albanian passports for herself and her son Lion. Neither subject's passport had any valid immigration documents nor stamps that would allow them to enter,

4

remain in, or transit through the United States legally. Neither Diana nor Lion appeared to speak English well enough to answer the agents' questions. Bledar Mulaj stated that they were his wife and child and that they were also citizens of Albania with no immigration documents permitting their entry into the United States. All subjects were detained and transported to the Newport Station for processing and further investigation.

12. Agents conducted a recorded interview with Bledar Mulaj. Bledar Mulaj stated that he understood the rights as read to him, and he indicated that he was willing to answer questions without an attorney present. Bledar Mulaj stated that he was a citizen and national of Albania. He stated that he had entered the United States legally as B1/B2 visitor and then subsequently applied for asylum. Bledar Mulaj stated that he has been living and working in the Bronx/Yonkers areas of New York for the last two and a half years. He stated that he wanted to bring his family into the United States and had started asking his friends in the Bronx area if they knew how to bring people into the United States. Bledar Mulaj stated that a friend of a friend of a friend contacted him to facilitate the illegal entry of his wife and son into the United States. The smuggler—who Bledar Mulaj referred to only as "Tony"—told him what to do, and his wife Diana Mulaj was contacted by a smuggler in Canada who told her what to do. On April 28, 2022, Bledar Mulaj met "Tony" and paid him $18,000 in U.S. currency to bring his wife and son into the United States. "Tony" told Bledar Mulaj that the price had gone up $3,000 (from an original sum of $15,000) because Lion Mulaj was a young child and it would be more difficult to arrange his entry. Around the same time, Diana Mulaj was instructed to go to Montreal and stay at the Motel Colibri the night of April 29. Bledar Mulaj arranged for a friend to rent a minivan from Enterprise Car Rentals on his behalf, because he was unable to do so himself. Bledar Mulaj was told by "Tony" to leave the Bronx around midnight (April 29 into April 30) and take

5

Interstate 91 north toward Canada. "Tony" stated that he would be following closely behind Bledar Mulaj in "Tony's" own vehicle. When they were nearing the border with Canada, "Tony" instructed Bledar Mulaj to exit Interstate 91 at exit 25 (Barton, Vermont). Once there, "Tony" switched vehicles with Bledar Mulaj. Bledar Mulaj was then driving "Tony's" vehicle, which he believed was a Honda Accord, and "Tony" drove the rented Chrysler Pacifica north to meet Bledar Mulaj's family. Bledar Mulaj drove "Tony's" vehicle to the Circle K in Barton, Vermont where he parked and waited for approximately 15 minutes before driving south on Interstate 91 to the rest area located near Burke, Vermont. Bledar Mulaj waited approximately 10 minutes more, and then "Tony" drove into the rest area in the white Chrysler Pacifica. "Tony" and two other adult males exited the minivan, entered the sedan as Bledar Mulaj exited it, and left the area at a high rate of speed. Bledar Mulaj entered the white Chrysler Pacifica in which his wife and child were waiting. At some point after they departed the rest area, Bledar Mulaj discovered that a blue iPhone was in the vehicle; his wife Diana Mulaj stated that it was the smuggler's phone. During the vehicle stop by Border Patrol, Diana Mulaj had taken the phone and hidden it under the farthest back seat.

13. At the Newport Border Patrol Station, Border Patrol Agents searched the Chrysler Pacifica and discovered a blue iPhone (the Device) under the farthest back seat. Both Diana Mulaj and Bledar Mulaj stated that the phone did not belong to them.

14. Based on my knowledge of this investigation—which has previously involved the illegal entry of ethnic Albanians in the vicinity of North Troy, Vermont and the transportation by ethnic Albanians from Dominion Avenue toward New York—I believe that an unknown smuggler was working as part of an alien-smuggling organization and that he left the Device in the white Chrysler Pacifica by accident. Based on the isolated location and the time of the pick-

6

up on Dominion Avenue, it is likely that any driver would know or suspect that the people being picked up in that location would have illegally entered the United States. That conclusion is bolstered in this case because Bledar Mulaj stated that he paid to have his wife Diane Mulaj and his son Lion Mulaj smuggled into the United States.

15. Based on the facts outlined above, I submit there is also probable cause to believe that an unknown smuggler took part in the arrangements to bring Diana Mulaj and Lion Mulaj to the United States from Canada by both maintaining contact with one or more smugglers in Canada who were in contact with Diana Mulaj and maintaining contact with Bledar Mulaj during the initial phases of the event. Accordingly, I believe that the unknown smuggler likely used the Device for those purposes and that the Device is likely to contain evidence of alien smuggling activities in violation of 8 U.S.C. §§ 1324 and 1325.

## Conclusion and Request

16. Based on the foregoing, I submit there is probable cause to believe that on April 30, 2022, an unknown smuggler violated 8 U.S.C. § 1324 by bringing four aliens to the United States from Canada and attempting to transport them in furtherance of their entry, which entry was in violation of 8 U.S.C § 1325. I further submit that the information contained in this affidavit establishes probable cause for the issuance of a search warrant authorizing the examination of the Device, further described in Attachment A, and the seizure therefrom of data described in Attachment B.

17. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Dated at Burlington, in the District of Vermont, this __12__ day of May 2022.

_____
Jeffrey M. Maney, Border Patrol Agent (Intel)
U.S. Border Patrol, Department of Homeland Security

Subscribed and sworn to before me on May 12th, 2022

_____
Hon. Kevin J. Doyle, Magistrate Judge
United States District Court
District of Vermont

8

# UNITED STATES DISTRICT COURT
for the
District of Vermont

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
IPHONE 7 MODEL 3C206LL/A CURRENTLY LOCATED AT THE ) Case No. 2:22-MJ-62
SWANTON BORDER PATROL STATION )
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of __Vermont__
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference, regarding evidence of violations of 8 U.S.C. §§ 1324 and 1325.

**YOU ARE COMMANDED** to execute this warrant on or before __May 25, 2022__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __U.S. Magistrate Judge Kevin J. Doyle__ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   May 12, 2022
                        3:12 p.m.                     _____
                                                      Judge's signature

City and state:   Burlington, Vermont                 Hon. Kevin J. Doyle, U.S. Magistrate Judge
                                                      *Printed name and title*

## **ATTACHMENT A**

The item to be searched is an iPhone 7 wireless smart phone (model number 3C206LL/A and IMEI 354918093529332) ("the Device"). The Device is currently located in the evidence safe at the Sector Intelligence Unit at the U.S. Border Patrol Swanton Station, 104 Raven Dr., Swanton, VT 05488.

## ATTACHMENT B

All data on the Device described in Attachment A that evidence violations of 8 U.S.C. § 1324 or 8 U.S.C. § 1325, including:

    a. Communications and other records related to international travel, transportation arrangements, rental agreements, overnight accommodations, itineraries, payments, or location updates—including e-mails, text messages, instant messages, chat logs, attachments to messages, and drafts;

    b. Photographs and other images of individuals or groups, border locations, currency, receipts, purchases, vehicles, and/or locations;

    c. Ledgers, notes, or other records of types, amounts, and prices of individuals picked up and transported, as well as information about the dates and places of those transactions;

    d. Records of financial transactions, including wire transfers, bank deposits and withdrawals, credit or debit card activities, and electronic currency activities;

    e. Contact lists showing names, street names, nicknames, phone numbers, email addresses, screen names of associated individuals;

    f. Geographic locations of the Device at times relevant to the investigation;

    g. Evidence indicating how and when the Device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

    h. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, usernames and passwords, documents, and browsing history; and

      i.    Records evidencing the use of the Device to access the internet, including Internet Protocol addresses used and internet activity (firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses).